IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MITCHELL P. GEDID,
     Plaintiff,

v.

HUNTINGTON NATIONAL BANK and
HUNTINGTON BANCSHARES
INCORPORATED and CHEX SYSTEMS
INCORPORATED,
     Defendants.

Civil Action No. 11-1000
District Judge Mark Hornak
Magistrate Judge Cynthia Reed Eddy

**REPORT AND RECOMMENDATION**

## I.  RECOMMENDATION

For the following reasons, the United States Magistrate Judge recommends that defendants' Motion to Compel Arbitration [ECF No. 14] be GRANTED, and that the case be dismissed.

## II.  REPORT

**Notice of Removal**

On August 2, 2011, defendants Huntington National Bank and Huntington Bancshares Inc. (collectively "Huntington") filed a Notice of Removal [ECF No. 1] of Plaintiff  Mitchell P. Gedid's lawsuit from the Court of Common Pleas of Allegheny County, Pennsylvania to this Court pursuant to 28 U.S.C. § 1441(a) and § 1332, and subsequently filed an Amended Notice of Removal [ECF No. 7].

**Plaintiff's Second Amended Complaint**

Plaintiff's Second Amended Complaint ("SAC") filed in state court (attached to defendants' Amended Notice of Reoval [ECF No. 7-19, Ex. S]) seeks compensatory and punitive damages, and injunctive relief, against Huntington Bancshares, a bank holding company

incorporated in Maryland with its principal place of business in Ohio, and Huntington Bank, an affiliate of Huntington Bancshares and a federally chartered national banking association deemed to be incorporated by the federal government, with its principal place of business in Ohio.[1]

In his SAC, Plaintiff alleges five claims against Huntington: Violations of the Pennsylvania Unfair and Deceptive Trade Practices and Consumer Protection Law 73 P.S. §§201-1, et seq. (Count I), Fraud (Count II), Negligent Misrepresentation (Count III), Conversion (Count IV), Unjust Enrichment (Count V). SAC, at 7-20. Plaintiff alleges that he opened a checking account with Sky Bank in 2005, and that, beginning in September 2007, Huntington began servicing his checking account. SAC ¶¶ 10, 12. Plaintiff alleges further that from September 2007 through February 2010, he engaged in numerous transactions using the debit card associated with his account, and that Huntington repeatedly and improperly assessed overdraft fees and other fees against his checking account. SAC ¶ 14.

More specifically, Plaintiff claims Huntington improperly reordered his transactions from highest to lowest dollar amount in order to maximize fees assessed, and failed to notify Plaintiff that he could incur insufficient funds overdraft fees on transactions even though, at the time of a given transaction, he had sufficient funds in his account to cover it. SAC ¶¶ 15-19. Plaintiff alleges Huntington's assessment of overdraft fees caused his account to incur a negative balance, which resulted in the assessment of additional overdraft fees totaling more than six thousand dollars. SAC ¶¶ 15-16. In addition, Plaintiff claims consequential damages, in that the wrongful assessment of overdraft fees prevented him from meeting other financial obligations, which resulted in the loss of a medical insurance policy in the amount of $5,000,000. SAC ¶ 36.

---

[1] Defendant Chex is an Arizona corporation which maintains a principal place of business in Minnesota. Chex and Plaintiff entered into a stipulation for discontinuance of all claims against Chex. Stipulation For Discontinuance [ECF No. 29].

As a result of the alleged wrongful conduct, Plaintiff seeks direct and compensatory damages and injunctive relief. In the aggregate, Plaintiff seeks damages in excess of $35,000,000, plus counsel fees, interest and costs. SAC, Prayer for Relief, [ECF No. 7-19, pp 27-30 of 95].

**Huntington's Motion to Compel Arbitration [ECF No. 14]**

The Court agrees with Huntington that <u>all</u> of Gedid's claims are subject to arbitration pursuant to the Arbitration Provision in the agreement governing Plaintiff's checking account, and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The Arbitration Provision between Gedid and Huntington broadly provides that "any claim, dispute or controversy between you and us that in any way arises from or relates to a deposit account" shall be subject to binding arbitration.

In 2007, Huntington Bancshares purchased Sky Bank and merged Sky Bank's operations into Huntington Bank. Decl. Bryan Carson, [ECF No. 14-2], ¶ 6. As a result, Sky Bank customer accounts, including Gedid's account, were converted to Huntington Bank. <u>Id</u>. In August 2007, Huntington Bank mailed Gedid a Welcome Letter informing him that "Sky Bank will soon become part of Huntington Bank." <u>Id</u>., ¶ 7. The Welcome Letter advised Gedid that beginning in September 2007, Huntington Bank would convert his Sky Bank checking account to a Huntington Bank checking account: "[s]tarting Monday September 24, 2007, we look forward to serving you as our Huntington customer." <u>Id</u>., ¶ 10.

As set forth in detail in the Declaration of Bryan Carson, Senior Vice President, Deposit Products and Pricing Director, the Welcome Letter was sent as part of, and consistent with, Huntington's standard practices and procedures. The Welcome Letter also enclosed Huntington Bank's Information Guide and "Account Agreement and Disclosure of Account Terms and Rules

and Regulations" (the "Rules and Regulations"). Decl. Bryan Carson ¶ 11. The Rules and Regulations became effective on September 22, 2007 and governed Plaintiff's account. Huntington Bank Rules and Regulations, see <u>id.</u>, ¶¶ 11-12, and Exhibit A, p. 3. The August 2007 Welcome Letter was mailed to Plaintiff first class mail, postage prepaid, at Mr. Gedid's last known address in Sky Bank's account records at the time it was acquired by Huntington.

Huntington's Rules and Regulations, [ECF No. 14-3], contain a binding Arbitration Provision that explicitly covers any claims against Huntington Bank and Huntington Bancshares that in any way relate to customer's accounts, including the fees assessed against an account. The Arbitration Provision gives each party the right to require the individual arbitration of any claims brought by the other party in court. Huntington's Rules and Regulations contain a box providing, in conspicuous bold face print:

> NOTICE OF ARBITRATION PROVISION
>
> The Account Documents are subject to an arbitration provision that is part of these Rules and Regulations. You should read the arbitration provision. It will affect the way in which you or we resolve any claim that we have against each other in connection with your account.

[ECF No. 14-3], Huntington Bank Rules and Regulations, p. 5, Exhibit A.

The Rules and Regulations also set forth a conspicuous, bolded and capitalized heading, followed by the terms of the Arbitration Provision in capitalized and bolded print:

> ARBITRATION PROVISION
>
> THIS ARBITRATION PROVISION CONTAINS IMPORTANT INFORMATION ABOUT YOUR DEPOSIT ACCOUNTS WITH US. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CLAIMS (AS DEFINED BELOW) WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO

PARTICIPATE IN A CLASS ACTION OR SIMILAR
PROCEEDING. IN ARBITRATION, THE CLAIM IS
SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR,
INSTEAD OF A JUDGE OR JURY. ARBITRATION
PROCEDURES ARE SIMPLER AND MORE LIMITED
THAN RULES APPLICABLE IN COURT. THE DECISION
OF THE ARBITRATOR IS FINAL AND BINDING.

[ECF No. 14-3], Huntington Bank's Rules and Regulations, p. 11, Exhibit A.

The Arbitration Provision in the Rules and Regulations also provided that: "By opening a deposit account with us or accepting or using any deposit account services, you agree to all the terms of this Arbitration Provision." Id., p. 11-12, Exhibit A. Huntington began servicing Plaintiff's account in September 2007. Decl. Bryan Carson ¶ 10. Plaintiff continued using his account that same month and thereafter, making deposits, writing checks and using his debit card. Id., ¶ 13.

The Arbitration Provision explicitly applies not only to Huntington but also to "its parent companies, wholly or majority-owned subsidiaries, affiliates, successors, assigns and any of their employees, officers, and directors." [ECF No. 14-3], Huntington Bank Rules and Regulations, p. 11. The Arbitration Provision applies to any "deposit account," including a checking account at Huntington Bank, and provides for the binding arbitration of "any claim, dispute or controversy between you and us that in any way arises from or relates to a deposit account." Id., at p. 12. A dispute is defined as having the "broadest possible meaning," and includes "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief)." Id.

Regarding payment, the Arbitration Provision provides that Huntington will pay the first $1,000 in arbitration fees and it will consider paying all of the fees when requested by the

customer. <u>Id</u>., at p. 13. The Arbitration Provision further provides that any arbitration hearing "must take place at a location reasonably convenient to your residence." <u>Id</u>., at p.14. Finally, the Arbitration Provision explicitly states that it "is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. and not by any state arbitration law," and that the arbitrator is bound to apply applicable substantive law: "The arbitrator must apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and claims of privilege recognized at law . . . . The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court." <u>Id</u>., at p. 13.

### The Federal Arbitration Act - 9 U.S.C. §§ 1-16

Recently, the United States Supreme Court reinforced the "liberal federal policy" favoring arbitration agreements according to their terms. <u>CompuCredit Corp. v. Greenwood</u>, --- U.S ---132 S.Ct. 665 (January 10, 2012). In reversing the decision of the Court of Appeals and holding that that the Credit Repair Organizations Act, section 409, 15 U.S.C.A. § 1679g, did not foreclose an agreement to arbitrate claims brought pursuant thereto, the United States Supreme Court explained the liberal federal policy as follows:

> The background law governing the issue before us is the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., enacted in 1925 as a response to judicial hostility to arbitration. <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. —, ——, 131 S.Ct. 1740, 1745 (2011). As relevant here, the FAA provides:
>
> > "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.
>
> This provision establishes "a liberal federal policy favoring arbitration agreements." <u>Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). See also, e.g., <u>Concepcion</u>, <u>supra</u>, at

—, 131 S.Ct., at 1745; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). It requires courts to enforce agreements to arbitrate according to their terms. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985). That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been "overridden by a contrary congressional command." Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226 (1987). See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 628 (1985).

Greenwood, --- U.S. ---, 132 S.Ct. at 668-69 (parallel citations omitted).

The FAA entitles any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to obtain a "[court] order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; see Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 178 (3d Cir. 2010). When adjudicating a motion to compel arbitration, the court must address two issues: (1) whether the parties have entered into a valid written agreement to arbitrate, and (2) whether the dispute in question falls within the scope of that agreement. Century Indemnity Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 523 (3d Cir. 2009); Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009) (citing Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005)); Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 202 (3d Cir. 2001); 9 U.S.C. § 2 (addressing the validity, irrevocability, and enforcement of written agreements to arbitrate). Absent language in the parties' agreement clearly providing otherwise, the arbitrability of a dispute is a question of law for the court to determine. U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006); General Electric Co. v. Deutz AG, 270 F.3d 144, 154 (3d Cir. 2001).

For a court to compel arbitration, it initially must find that there is a valid agreement to arbitrate because the basis for contractual arbitration is consent, not coercion. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). To determine whether the parties have

agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." Century Indemnity Co., 584 F.3d at 524 (citations omitted). The reviewing court must apply federal substantive law to "determine [ ] whether an issue governed by the FAA is referable to arbitration[,]" but the court may apply state law when assessing issues of contract formation and defenses to enforcement. Gay v. CreditInform, 511 F.3d 369, 388 (3d Cir. 2007); Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 214 (3d Cir. 2003). See also Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 685 (1996) (pursuant to section two of the FAA, federal courts may apply state law "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally").

**Standard of Review of Motion to Compel**

Granting a motion to compel arbitration effects a "summary disposition of the [factual] issue" of the existence of an agreement to arbitrate, and, for this reason, courts should consider the facts in the light most favorable to the nonmoving party, giving that party "the benefit of all reasonable doubts and inferences that may arise." Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 & n. 9 (3d Cir. 1980) (quoted with approval in Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 106 (3d Cir. 2000)). In the context of such a motion, the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party. See id. (citing Fed. R. Civ. P. 56(c)). See also Black v. JP Morgan Chase & Co., 2011 WL 3940236, *1 (W.D.Pa. 2011) (citations omitted) (standard of review on motion to compel arbitration same as standard of review on motion for summary judgment; court may consider all affidavits, exhibits and discovery in record, and motion to compel arbitration should be granted only where there is no genuine issue of fact concerning the formation of the

agreement to arbitrate; party opposing arbitration is entitled to benefit of all reasonable doubts and inferences that may arise).

**Validity of Agreement to Arbitrate**

Plaintiff does not and cannot seriously dispute that, if the Huntington Bank Rules and Regulations and the Arbitration Provision included therein govern Plaintiff's transactions, his claims and disputes fall squarely within the broad scope of that agreement. Plaintiff opposes the motion to compel arbitration on the grounds that he never agreed to arbitrate with Huntington, that he never signed or executed such an agreement, and that no valid agreement to arbitrate exists.

Plaintiff argues that no valid agreement to arbitrate exists because he was unaware of Huntington's Arbitration Provision and that he had not received nor read it until the case was removed to federal court in August 2011. Plaintiff's Response in Opposition to Motion to Compel [ECF No. 19], pp. 15-20. Plaintiff offers only his own unsupported assertions in support of this argument which are insufficient as a matter of law. Arbitration may not be defeated by blanket denials of the existence of an agreement to arbitrate. Equally futile are arguments that an arbitration agreement may not be enforced because a party was unaware of it, or did not read it. Huntington need not establish that Plaintiff actually read the Arbitration Provision.

Nor does it have to provide proof that the Arbitration Provision was actually received by Plaintiff. Huntington need only show that the Arbitration Provision was mailed to Plaintiff, and it has done so. Plaintiff has not and cannot rebut the presumption of receipt.

"Under the mailbox rule, '[p]roof of mailing creates a rebuttable presumption of receipt of the mailed item.'" Geise v. Nationwide Life and Annuity Co. of America, 939 A.2d 409, 423 (Pa.Super. 2007) (quoting Jones v. Prudential Prop. and Cas. Ins. Co., 856 A.2d 838, 845

(Pa.Super. 2004). See also Carnathan v. Ohio Nat'l Life Ins. Co., 2008 WL 2578919, at *3 (M.D.Pa. June 26, 2008) ("Under Pennsylvania law, proof of mailing raises a rebuttable presumption that the mailed item was received.") (citing Samaras v. Hartwick, 698 A.2d 71, 73 (Pa.Super.Ct. 1997)). For the presumption of the receipt of a letter to be triggered, "the party who is seeking the benefit of the presumption must adduce evidentiary proof that the letter was signed in the usual course of business and placed in the regular place of mailing." Geise, 939 A.2d at 423 (citing Commw. Dep't of Transp. v. Whitney, 575 A.2d 978, 979 (Pa. Commw.Ct. 1990). To invoke the presumption, proof of procedures followed in "the regular course of operations" gives rise to a strong inference that it was properly addressed and mailed. In re Cendant Corp. Prides Litig., 311 F.3d 298, 304 (3d Cir. 2002) (quoting Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993)). Proof that the item was properly addressed, had sufficient postage, and was deposited in the mail is sufficient to raise the presumption. Cendant Corp., 311 F.3d at 304 (citing Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989)).

The party seeking to avoid arbitration bears the burden of proving invalidity of an arbitration agreement. Comrey v. Discover Fin. Serv., Inc., 806 F.Supp.2d 778, 783 (M.D. Pa. 2011) (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000)). Mere denial is insufficient to rebut the presumption of receipt. Comrey, 806 F.Supp. 2d at 783 (citing Discover Bank v. Vaden, 489 F.3d 594, 607 (4th Cir. 2007)). "Once this presumption is established, the party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt." Geise, 939 A.2d at 423 (quoting Donegal Mut. Ins. Co. v. Insurance Dept., 719 A.2d 825, 827 (Pa.Commw.Ct. 1998)).

Huntington has offered affidavits from senior officers regarding its practices and procedures in notifying customers of its acquisition of other financial institutions, including Sky Bank, and has provided documentary evidence supporting that those usual business procedures were followed with regard to Mr. Gedid's account. The mailings to Mr. Gedid to his last known address did not return undeliverable. Assuming, without deciding, that Plaintiff did not in fact receive and read Huntington's Welcome Letter sent as part of, and consistent with, Huntington's standard practices and procedures, and enclosed Information Guide and "Account Agreement and Disclosure of Account Terms and Rules and Regulations" setting forth the Arbitration Provision in bold and conspicuous type, Plaintiff has offered nothing but his simple denial of receipt, and that is simply inadequate to rebut the presumption of receipt.

**Estoppel**

Moreover, Plaintiff's use of an ATM card and his account at Huntington over a period of years estops him from denying the existence of the agreement with that Bank. "There are five traditional theories under which a signatory can bind a non-signatory to an arbitration agreement: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel." Marciano v. MONY Life Ins. Co., 470 F.Supp.2d 518, 525 (E.D. Pa. 2007) (Robreno, J.) (citing Trippe Mfg. Co., 401 F.3d at 532); Miron v. BDO Seidman, LLP, 342 F.Supp.2d 324 (E.D. Pa. 2004) (citing, inter alia, E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001) (finding that contract theories may bind a non-signatory to an arbitration clause in a valid agreement exist, "i.e., third party beneficiary, agency/principal, and equitable estoppel.")). The policy behind this doctrine is to "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." DuPont, 269 F.3d at 200. If a

party derives a direct benefit from a contract, he cannot then deny the arbitration clause it contains. Id.

Estoppel, or more fully equitable estoppel, is typically found where a non-signatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." Friedman v. Yula, 679 F.Supp.2d 617, 627-28 (E.D.Pa. 2010) (citing DuPont, 269 F.3d at 199). "With respect to equitable estoppel, . . . more traditional theory allows signatories to impose arbitration on non-signatories when the non-signatory knowingly embraces, exploits, or receives the benefits of the agreement containing the arbitration clause, despite having never signed it." Miron, 342 F.Supp.2d at 333.

It would certainly be inequitable to excuse Plaintiff from the arbitration agreement governing his relationship with Huntington, in light of his continuous use of his account with that Bank following its acquisition of Sky Bank in 2007, making deposits, writing checks and using his debit card. Having willingly availed himself of Huntington's services, Plaintiff cannot now back out of the arbitration provision which governs the customer-bank relationship herein, and is equitably estopped from doing so. Upon Plaintiff's use of his account, he became bound by Huntington Bank's Arbitration Provision.

### III. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion to compel arbitration [ECF No. 14] be GRANTED. IT IS FURTHER RECOMMENDED that the Court dismiss the case and relinquish jurisdiction, rather than stay the proceedings pending arbitration, because all of Plaintiff's claims are subject to arbitration under the broad agreement

in this case.  See <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 600 (3d Cir. 2002) (if all of the claims are arbitrable, a court may dismiss the entire action).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, Plaintiff is allowed until **February 27, 2012**, to file objections to this report and recommendation.  Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: February 10, 2012



<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


cc: all ECF registered parties and counsel